IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALIA SALEM AL-SABAH,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>WORLD BUSINESS LENDERS, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 1:18-cv-02958-SAG |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* 1, 3, AND 7 ON ISSUE PRECLUSION AND TESTIMONIAL ISSUES**

Plaintiff, Alia Salem Al-Sabah ("Al-Sabah"), by and through undersigned counsel, hereby submits her opposition to Defendant's Motions *in Limine* 1, 3, and 7 on Issue Preclusion and Testimonial Issues (ECF No. 179, the "Motion"), and states as follows:

**INTRODUCTION**

In 2020, a jury found that Jean Agbodjogbe defrauded Plaintiff Alia Al-Sabah by stealing over $7 million from her under false pretenses and using the money to, *inter alia*, purchase real estate in his own name or in the name of entities he owned and controlled in their entirety. *Al-Sabah v. Agbodjogbe*, No. 17-cv-730-SAG (D. Md.) (the "Agbodjogbe trial"). In this case, Al-Sabah will show that WBL aided and abetted Agbodjogbe's fraud by helping him monetize the fraudulently obtained real estate with high-interest loans WBL knew Agbodjogbe could never repay. WBL now seeks to preclude Al-Sabah from "introducing, arguing, or otherwise relying on *any* findings or testimony from the Agbodjogbe trial," (Mot. at 5 (emphasis added)), despite the obvious relevance to this case. WBL also seeks to exclude evidence relating to defaulted defendant Kenneth Williams as well as testimony about "money laundering," both of which are relevant to

demonstrating WBL's decision to remain willfully ignorant of Agbodjogbe's fraud in the face of numerous red flags.

Aside from the fact that such evidence is both admissible and relevant, WBL's evidentiary concerns are redressed by the fact that this is a bench trial, wherein the Court is well-equipped to handle concerns over admissibility at trial and there is no concern of misleading a jury. WBL's Motion should be denied.

## **RELEVANT FACTUAL BACKGROUND[1]**

In the Agbodjogbe trial, Al-Sabah proved by clear and convincing evidence that Agbodjogbe defrauded her, for which she was awarded over $7 million in damages. WBL assisted Agbodjogbe by extending him high-interest loans secured by property Agbodjogbe purchased with Al-Sabah's funds. In doing so, WBL helped Agbodjogbe monetize the property and continue his scheme.

Agbodjogbe's relationship with WBL began in October 2015 when loan broker Kenneth Williams at Uptown Commercial Capital (both defaulted Defendants in this case[2]) emailed WBL that Agbodjogbe was looking to borrow against three properties in Baltimore (306-310 N. Howard, 327 N. Eutaw, and 5722 York Road) and one in New York (325 Fifth Avenue). WBL received Agbodjogbe's Uniform Commercial Loan Application dated as of October 13, 2015, claiming he owned millions of dollars of property, free and clear of any mortgages or mortgage liens.

During the loan underwriting process, Agbodjogbe told WBL Credit Analyst Jon Pezzino in a January 18, 2016 recorded "merchant interview" that he had borrowed from his kids' savings to facilitate the acquisition of long-lead-time restaurant equipment and needed the loan for which

---

[1] For the sake of brevity, Al-Sabah incorporates the statement of facts she intends to prove at trial as detailed in the Proposed Pretrial Order (ECF No. 178).
[2] On February 22, 2019, this Court entered default judgment against Defendants Uptown Commercial Capital and Kenneth Williams ("defaulting Defendants"), for Al-Sabah's claims of civil conspiracy (Count I), aiding and abetting (Count II), fraud by omission (Count III), constructive fraud (Count IV), negligence (Count V), and mortgage fraud (Count X). (ECF No. 39.)

he had applied to satisfy a promise to his wife to "at least put [that money] back." WBL made verification of the kids' savings/trust account a condition to closing on the loan. In his deposition in this case, Agbodjogbe testified that Kenneth Williams coached him to lie about his kids' non-existent savings account and told Agbodjogbe that Williams had spoken with Pezzino and previewed for him the false story he was about to hear.

During this process, WBL also was concerned that Agbodjogbe was potentially engaged in money laundering. WBL's then-Senior Investment Officer, Cem Oztreves, described Agbodjogbe's application in a January 2016 WBL "Underwriting Review Form" as having "numerous character concerns," including, "File having high fraud risk." Around the same time, on January 22, 2016, WBL Vice President Yasemin Fakioglu raised concerns about the loan to her WBL colleagues Bobby Williams, Kory Stafford, and Racquel Ramsey:

> The bank accounts provided, do not support the loan amount, as it has wires again, that cannot be explained… [306-310 N. Howard, the property proposed to secure the loan] [is] not A PLUS, its not even completed…Client has been not truthful this whole time, and still has not been able to clear our minds behind the fact that he is potentially money laundering….He has no proof on how he can afford our payments either.

Despite these clear, and clearly received, signals that Agbodjogbe's file carried fraud risks and Agbodjogbe's failure to meet several "required" closing conditions, WBL nevertheless closed on three loans to Agbodjogbe.

## ARGUMENT

**I.     Findings and testimony from the Agbodjogbe trial are relevant to Al-Sabah's claim for aiding and abetting and are not inadmissible. (Motion *in Limine* No. 1).**

The fact that a jury found that Agbodjogbe defrauded Al-Sabah is relevant and admissible in this case. In arguing to the contrary, WBL asserts that collateral estoppel does not apply to preclude WBL from litigating any issue already decided in the Agbodjogbe trial. While collateral estoppel in its traditional form does not apply in this case, Maryland courts have recognized the

3

doctrine of *non-mutual* collateral estoppel where "one of the parties in the present suit was neither a party nor in privity with a party to the prior action." *Culver v. Md. Ins. Comm'r*, 175 Md. App. 645, 653, 931 A.2d 537, 542 (2007). "The foundation of the rule of nonmutual collateral estoppel is that the party to be bound must have had a full and fair opportunity to litigate the issues in question." *Welsh v. Gerber Prods., Inc.*, 315 Md. 510, 518, 555 A.2d 486 (1989). In the Agbodjogbe trial, the issue of fraud and whether Agbodjogbe defrauded Al-Sabah necessarily was litigated – indeed, it was the crux of the case – and that judgment has preclusive effect in this litigation. No one, including WBL, had a greater incentive to demonstrate Agbodjogbe did not defraud Al-Sabah than Agbodjogbe himself. And Agbodjogbe has exerted every conceivable effort to do so, to no avail. Moreover, Al-Sabah brought the instant suit against WBL on September 25, 2018, well before the Agbodjogbe trial. WBL had the opportunity to seek to intervene in the Agbodjogbe trial; instead, WBL moved to stay this case pending the outcome of the Agbodjogbe trial, effectively inviting the exact scenario that unfolded – Agbodjogbe was found liable for defrauding Al-Sabah in a trial which WBL chose to sit out. WBL should not be permitted to take a "wait and see" approach and then claim the right to relitigate Agbodjogbe's fraud when the resulting verdict goes against WBL.

Even if the judgment from the Agbodjogbe trial is not given preclusive effect in this case, the fact of the verdict and testimony from that trial are both relevant and admissible. To prevail on her aiding and abetting claim, Al-Sabah must prove: (1) a tortious act committed by the primary actor, (2) the defendant's knowledge of that tortious act, and (3) the defendant's substantial assistance in the commission of that tortious act. *See Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 199, 665 A.2d 1038, 1049 (1995); *Lathan v. Sternberg*, No. 0988, 2015 WL 6125427, at *7 (Md. App. Sept. 30, 2015) (citing *Manikhi v. Mass Transit Admin.*, 360

Md. 333, 360 (2000)).  There is no question that the verdict and testimony from the Agbodjogbe trial are relevant to Al-Sabah's claim in this case, and WBL's attempt to argue otherwise is disingenuous.  WBL cites to a case from the United States District Court for the Eastern District of Louisiana where the Court excluded past verdicts against Defendants because they were *not relevant* to the proceeding before that court.  (Mot. at 8-9 (citing *In re Chinese Drywall Prod. Liab. Litig.*, 2023 WL 2574110, at *3 (E.D. La. Mar. 20, 2023).)  That is not the case here, where the verdict and testimony from the Agbodjogbe trial are *directly* relevant to the first and basic element of Al-Sabah's aiding and abetting claim.

As to whether the verdict and testimony are inadmissible hearsay, WBL is also incorrect.  First, the verdict and most of the trial testimony will be admissible under Rule 804 if Agbodjogbe fails to appear (despite being served a validly issued trial subpoena).  Second, this evidence is admissible under Rule 807's residual exception as evidence that is "supported by sufficient guarantees of trustworthiness – after considering the totality of circumstances under which [the statements were] made and evidence, if any, corroborating" it, and as evidence that "is more probative on the point for which it is offered than any other evidence" that Al-Sabah can obtain "through reasonable efforts."  Fed. R. Evid. 807(a).  The verdict and trial testimony from the Agbodjogbe trial easily meet this standard.  There is simply no evidence that is more trustworthy and more probative to establish Agbodjogbe's fraud than the jury's verdict after hearing the evidence.  WBL has also had ample notice of this evidence as required by Rule 807(b).

Finally, it is not in the interest of judicial efficiency to rehash in this trial the overwhelming, "mountain" of evidence of fraud from the Agbodjogbe trial.  *See Al-Sabah v. Agbodjogbe*, No. 17-cv-730-SAG (D. Md. Dec. 14, 2020), ECF No. 327 at 4.  Al-Sabah has produced to WBL every document exchanged or otherwise obtained in discovery in the Agbodjogbe case, including

deposition transcripts and deposition exhibits of every witness deposed, and transcripts of Agbodjogbe's and Al-Sabah's trial testimony. Those sources offer abundant evidence of Agbodjogbe's fraud – a judgment which the Court has already affirmed multiple times, despite Agbodjogbe's repeated attempts to overturn it. It belies common sense and the spirit of judicial efficiency for Al-Sabah to present her entire case from the Agbodjogbe trial all over again here.[3]

Moreover, because this is a bench trial, the Court need not resolve these admissibility issues on a motion *in limine* because the risk of misleading a jury attendant to such concerns simply do not exist here, where the Court will be serving as the finder of fact. *See U.S. S.E.C. v. Agora, Inc.*, No. MJG-03-cv-1042, 2005 WL 6749148, at *1 (D. Md. Mar. 25, 2005) (denying motions *in limine* regarding evidence admissibility because "it would be inefficient to undertake this exercise in the context of a bench trial").

## II. Evidence relating to defaulted defendant Kenneth Williams and testimony related to money laundering are relevant and admissible. (Motions in Limine Nos. 3 and 7).

WBL cannot have it both ways. On the one hand, WBL argues that Al-Sabah must prove the underlying fraud, and on the other, WBL argues that Al-Sabah cannot introduce certain evidence that goes *directly* to proving Agbodjogbe's underlying fraud. Moreover, to satisfy the second element of the aiding and abetting claim, Al-Sabah must prove WBL's knowledge of Agbodjogbe's fraud, which can be satisfied by proving "willful blindness." *See Hoffman v. Stamper*, 385 Md. 1, 44 (2005) ("willful blindness to fraudulent activity . . . suffices as actual knowledge."). "Willful blindness occurs when a person has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance." *Id.*

---

[3] It should also be noted that, this Court has already taken judicial notice in this case of the "specific facts that Al-Sabah and Agbodjogbe stipulated to in the Agbodjogbe Lawsuit, as well as the verdict the jury rendered in that case," albeit at the motion to dismiss stage, and with the recognition that judicial notice does not overcome hearsay concerns. (*See* ECF No. 81 at 3 (citing Fed. R. Evid. 201(b)-(d)).)

(quotation marks and citation omitted). Kenneth Williams's statements regarding what WBL knew and statements from WBL's own employees related to money laundering are directly relevant to Al-Sabah's claim for aiding and abetting because they speak to WBL's knowledge of Agbodjogbe's fraud, and whether WBL was willfully blind to Agbodjogbe's fraudulent activity.

In the January 2016 merchant interview with Jon Pezzino, Agbodjogbe stated, as Williams instructed him to do, that he had borrowed from his children's savings to facilitate the acquisition of equipment and needed the loan to satisfy a promise to his wife. (PX 661, 662.) Indeed, WBL made verification of the children's savings/trust account a condition to closing on the loan they approved. (PX 671.) Had WBL followed through on its underwriting condition, they would have learned, as Agbodjogbe has since admitted repeatedly under oath, that his children had no such funds and there was no such savings account. But WBL chose to refrain from such an inquiry.

This evidence is not hearsay because it is asserted not for its truth, but rather as evidence of what was communicated to WBL regarding Agbodjogbe's story, in much the same way that the parties have stipulated to the admissibility of the various IRS 3520 forms. This testimony is also non-hearsay and admissible under Rule 801(d)(2) as an opposing party's statement. The only case WBL cites to preclude this evidence is an inapposite Eighth Circuit criminal case that precluded Rule 801(d)(2)'s application to a statement of a co-defendant whom the other co-defendant argued should be considered a party-opponent to him. *See United States v. Grajales-Montoya*, 117 F.3d 356, 364 (8th Cir. 1997) ("Even if Mr. Deluca could be considered a party-opponent with respect to Mrs. Deluca, he did not seek to offer the statements against her, as required by Fed. R. Evid. 801(d)(2). Mr. Deluca sought to introduce the statements to exonerate himself, and there is no reason to think that his exoneration could in any way depend on Mrs. Deluca's incrimination."). Here, there is no question that Plaintiff Al-Sabah is a party-opponent with respect to Defendant

Kenneth Williams and is *not* his co-defendant. As such, Al-Sabah is free to introduce this testimony under Rule 801(d)(2) as evidence of Kenneth Williams's role in the fraud.

As to the evidence relating to money laundering, again, the relevance cannot be seriously disputed. That WBL approved Agbodjogbe for three loans despite his file carrying a note of "high fraud risk" and a WBL employee expressing her concern that he was potentially money laundering is directly relevant to both WBL's knowledge of and substantial assistance in Agbodjogbe's underlying fraud. Nor is there any concern that mention at trial of "money laundering" would mislead a jury or lead to improper bias or unfair prejudice against WBL because this is a bench trial. *See U.S. S.E.C. v. Agora, Inc.*, No. MJG-03-cv-1042, 2005 WL 6749148, at *1 (D. Md. Mar. 25, 2005). Indeed, given the course of conduct alleged by Al-Sabah – WBL's facilitation of Agbodjogbe's conversion of the fraudulently purchased real estate into cash thereafter utilized for other purposes and essentially unrecoverable by Al-Sabah – there could hardly be a more apt descriptor of these events than "money laundering."

## CONCLUSION

For the reasons stated above, the Court should deny the Motion.

Dated: August 25, 2023

Respectfully submitted,

_____/s/_____
Michael B. MacWilliams (Fed. Bar No. 23442)
Elizabeth C. Rinehart (Fed. Bar No. 19638)
Catherine G. Ottenritter (Fed. Bar No. 20941)
**VENABLE LLP**
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
T: (410) 244-7400
F: (410) 244-7742
MBMacWilliams@Venable.com
LCRinehart@Venable.com
CGOttenritter@Venable.com
*Attorneys for Plaintiff Alia Salem Al-Sabah*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 25, 2023, I filed the foregoing electronically through the Court's CM/ECF filing system, which was served on all counsel of record.

```
                    /s/
              Catherine G. Ottenritter
```