IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALIA SALEM AL-SABAH<br><br>Plaintiff,<br><br>v.<br><br>WORLD BUSINESS LENDERS, LLC,<br><br>Defendant. | Civil Action No. 1:18-cv-02958-SAG |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTIONS IN *LIMINE* 1, 3, AND 7 ON ISSUE PRECLUSION
<u>AND TESTIMONIAL ISSUES</u>**

**TABLE OF CONTENTS**

Introduction ................................................................................................................................ 1

Argument ................................................................................................................................... 3

    I.    The Court should preclude Plaintiff from relying on any findings or testimony from the Agbodjogbe trial [MIL No. 1] ...................................................................... 3

        A.    Nonmutual Collateral Estoppel Does Not Apply to WBL ................................ 3

        B.    No Hearsay Exceptions Apply to the Testimony or Verdict from the Agbodjogbe Trial .................................................................................................................. 4

    II.    The Court should preclude Plaintiff from attempting to introduce irrelevant, hearsay statements of Kenneth Williams [MIL No. 3] .............................................. 7

    III.    The Court should prohibit Plaintiff from eliciting irrelevant testimony about money laundering [MIL No. 7] ................................................................................ 10

Conclusion ............................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. Mayor*,
    892 A.2d 1173 (Md. Ct. Spec. App. 2006) ............................................................................ 3, 4

*In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*,
    810 F.3d 913 (4th Cir. 2016) ..................................................................................................... 5

*Martin v. Wilks*,
    490 U.S. 755 (1989) ................................................................................................................... 4

*Nipper v. Snipes*,
    7 F.3d 415 (4th Cir. 1993) ..................................................................................................... 6, 7

*United States v. Gomez*,
    774 F. App'x 136 (4th Cir. 2019) ............................................................................................ 5

*United States v. Grajales-Montoya*,
    117 F.3d 356 (8th Cir. 1997) ..................................................................................................... 8

*United States v. Lucas*,
    836 F. App'x 142 (4th Cir. 2020) ............................................................................................ 6

*United States v. Sinclair*,
    74 F.3d 753 (7th Cir. 1996) ....................................................................................................... 6

**Other Authorities**

Federal Rule of Evidence 801(d)(2) ..................................................................................... 7, 8, 9

Federal Rule of Evidence 803(8)(C) ............................................................................................. 6

Federal Rule of Evidence 803(22) ................................................................................................. 1

Federal Rule of Evidence 803(23) ................................................................................................. 1

Federal Rule of Evidence 804(b)(1) .......................................................................................... 1, 5

Federal Rule of Evidence 807 ..................................................................................................... 1, 5

**INTRODUCTION**

Plaintiff's response shows that—despite her eagerness to avoid scrutiny over whether she justifiably relied on Agbodjogbe's representations—she has no basis to do so. Plaintiff first asks the Court to hold that the fraud findings from the trial against Agbodjogbe (the "Agbodjogbe Trial") are binding against WBL because WBL could have intervened in the case but elected not to do so. She cites no law to support her request, likely because the law is the opposite of what she wishes it were. Both Maryland and U.S. Supreme Court precedent is clear that findings from a trial where WBL was not a party cannot bind WBL, even if WBL theoretically could have sought permission to intervene.

Plaintiff next incorrectly argues that the verdict and Agbodjogbe's testimony from the Agbodjogbe Trial are relevant and not inadmissible hearsay. She fails to address WBL's argument against the application of Federal Rule of Evidence 804(b)(1)—*i.e.*, that WBL was not a party to the Agbodjogbe Trial and that Agbodjogbe did not adequately protect WBL's interests—and merely asserts (again without authority) that the testimony is admissible under Rule 804 if Agbodjogbe ignores his trial subpoena. She is wrong.

Plaintiff then leans heavily on Rule 807's residual hearsay exception to admit both Agbodjogbe's trial testimony and the verdict—again, without citing any precedent for its applicability. The residual exception is reserved for rare and exceptional circumstances not present here, particularly since Agbodjogbe was deposed for nearly 14 hours *in this case* and is within the Court's subpoena power. Indeed, applying Rule 807 to the Agbodjogbe Trial verdict would undermine the intent of the drafters of the Federal Rules of Evidence, who specifically delineated when judgments from other cases would be admissible under the hearsay rules (*see* Rule 803(22) [admissibility of a previous conviction] and Rule 803(23) [judgments as to family history]).

In short, the law requires Plaintiff to prove her claim of fraud at trial (including establishing

1

that she justifiably relied on Agbodjogbe's misrepresentations) without Agbodjogbe's testimony from the Agbodjogbe Trial and with all testimony on the issue being subject to WBL's cross-examination.

As to Plaintiff's plan to elicit testimony from Agbodjogbe about loan broker Kenneth Williams's alleged double hearsay statements, Plaintiff focuses on the wrong layer of hearsay in her response. She incorrectly argues—again without authority—that a statement by one of her former party opponents is admissible against all of her current party opponents. And she argues that Williams's alleged statement is not hearsay because she will not offer it for its truth but rather for what WBL considered in deciding to make the loans. But these arguments—even if they were correct (which they are not)—ignore the initial layer of hearsay that Plaintiff cannot avoid. Williams did not offer that statement in any testimony in any case, let alone this case. Agbodjogbe testified about what *Williams told him*. And Plaintiff is offering Agbodjogbe's statements about what Williams told him for their truth (*i.e.*, that Williams actually had the conversation with WBL he allegedly described to Agbodjogbe), so it is all inadmissible hearsay.

Finally, Plaintiff's arguments about the relevance of money laundering illustrate a fundamental problem with her attempt to prove her aiding-and-abetting claim here. Plaintiff must prove that WBL knew or was willfully blind *to Agbodjogbe's fraud against Plaintiff*. Plaintiff seems to believe that evidence of WBL's suspicions about Agbodjogbe's character in general or his ability to repay the loans is enough to establish willful blindness. That is not right. This case is not a referendum on WBL's underwriting practices or the high-risk loans it offered to Agbodjogbe. The relevant inquiry is whether WBL knew about or deliberately ignored suspicions of *Agbodjogbe's fraud against Plaintiff*. WBL's motion seeks to streamline the trial by asking the Court to force Plaintiff to focus on evidence relevant to that issue—not whether WBL could have

32478760.2

caught Agbodjogbe in unrelated lies he made to WBL if it had followed a more robust underwriting process.

For all those reasons, WBL requests that the Court grant its motions *in limine* related to preclusion and testimonial issues.

**ARGUMENT**

**I.  THE COURT SHOULD PRECLUDE PLAINTIFF FROM RELYING ON ANY FINDINGS OR TESTIMONY FROM THE AGBODJOGBE TRIAL [MIL NO. 1]**

**A.  Nonmutual Collateral Estoppel Does Not Apply to WBL**

WBL's opening brief explained that Plaintiff cannot rely on collateral estoppel to preclude WBL from litigating the issue of the underlying fraud because it was neither a party nor a privy to the Agbodjogbe Trial. (Dkt. 179 ("Motion") at 6–8.) In response, Plaintiff argues that the fraud finding from the Agbodjogbe Trial should be given preclusive effect because "WBL had the opportunity to seek to intervene in the Agbodjogbe trial; instead, WBL moved to stay this case pending the outcome of the Agbodjogbe trial, effectively inviting the exact scenario that unfolded—Agbodjogbe was found liable for defrauding Al-Sabah in a trial which WBL chose to sit out." (Dkt. 188 ("Opp.") at 4.) Plaintiff fails to support this argument with any precedent, which is unsurprising because the law is the opposite of what she claims.

In *Brown v. Mayor*, the court rejected an argument that a city and its police department—which had been dismissed as defendants from a prior wrongful death action about the same incident—were collaterally estopped by issues decided in a summary judgment ruling made against another defendant in that case *after* they had been dismissed. *Brown v. Mayor*, 892 A.2d 1173, 1181–82 (Md. Ct. Spec. App. 2006). In the subsequent case where plaintiff sought indemnification from the city and police department, the court refused to apply collateral estoppel against those defendants in part because they did not have a "full and fair opportunity" to litigate

3

an issue decided after they were dismissed from the prior case, rejecting the plaintiff's argument that they "could have remained in the wrongful death case to litigate the issue," and explicitly noting the defendants "were not required to do so." *Id*. *Brown* refutes Plaintiff's theory that non-parties may be bound by issues decided in cases they are aware of and theoretically could have litigated but "chose to sit out." (Opp. at 4.) And *Brown* aligns with federal preclusion law, where the U.S. Supreme Court over 30 years ago rejected the argument that non-parties had to either seek permission under Federal Rule of Civil Procedure 24 to intervene in litigation that involved issues that could affect them or else face collateral estoppel effects from it later. *Martin v. Wilks*, 490 U.S. 755, 764–65 (1989) (noting that "a party seeking a judgment binding on another cannot obligate that person to intervene," and that "the attribution of preclusive effect to a failure to intervene" is "inconsistent with Rule 19 and Rule 24").

Plaintiff does not discuss or distinguish these cases, nor does she cite any cases applying collateral estoppel against someone that chose not to intervene in a prior lawsuit. The only collateral estoppel cases in her brief involve general discussions of the doctrine of nonmutual collateral estoppel or its application *against a party*. (Opp. at 4 (citing *Culver v. Maryland Ins. Com'r*, 931 A.2d 537, 544 (Md. 2007) (allowing use of offensive nonmutual collateral estoppel of prior attorney disciplinary decision in subsequent case against attorney), and *Welsh v. Gerber Prod., Inc.*, 555 A.2d 486 (Md. 1989) (analyzing collateral estoppel effect of consent judgment entered into by plaintiff on plaintiff's claim)).) These cases all cite uncontroversial but completely inapt law—none suggests that collateral estoppel can be applied against WBL because it did not intervene in the Agbodjogbe Trial.

### B. No Hearsay Exceptions Apply to the Testimony or Verdict from the Agbodjogbe Trial

Turning to the testimony and verdict from the Agbodjogbe Trial, WBL showed in its

opening brief that those are inadmissible hearsay and irrelevant. (Motion at 8–11.) Plaintiff does not dispute that they are hearsay but argues that two hearsay exceptions apply. First, she argues in one sentence that "if Agbodjogbe fails to appear," then "the verdict and most of the trial testimony will be admissible under Rule 804." (Opp. at 5.) This argument is absurd as to "the verdict," as it is not a statement by Agbodjogbe, so his failure to show up at trial does not affect its admissibility. But even for Agbodjogbe's testimony from the Agbodjogbe Trial, and assuming Plaintiff intended to argue it is admissible under Rule 804(b)(1), Plaintiff does not even respond to WBL's argument on why that exception does not apply (likely because she has no counterargument as to its inapplicability). As discussed on pages 9-10 of WBL's opening brief, the Rule 804(b)(1) hearsay exception does not apply because WBL was neither a party to nor adequately represented in the Agbodjogbe Trial. (*See* Motion at 9–10.)

Plaintiff next argues that the residual exception of Federal Rule of Evidence 807 applies to Agbodjogbe's testimony and the verdict from the Agbodjogbe Trial because "[t]here is simply no evidence that is more trustworthy and more probative to establish Agbodjogbe's fraud than the jury's verdict after hearing the evidence." (Opp. at 5.) But the "residual exception" is supposed to "be used very rarely, and only in exceptional circumstances." *United States v. Gomez*, 774 F. App'x 136, 137 (4th Cir. 2019) (quoting *United States v. Heyward*, 729 F.2d 297, 299–300 (4th Cir. 1984)). "For a statement to come under this exception it must contain 'circumstantial guarantees of trustworthiness,' … [and] be 'more probative on the point for which it is offered than any other evidence' available through 'reasonable efforts.'" *In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 925 (4th Cir. 2016).

Agbodjogbe's testimony is not admissible under the residual exception. His testimony does not contain the "circumstantial guarantees of trustworthiness" courts often ascribe to prior

testimony because the Court cannot trust that WBL's interests were served by Agbodjogbe's lawyers in that case. *See United States v. Lucas*, 836 F. App'x 142, 147 (4th Cir. 2020).[1] Nor is Agbodjogbe's trial testimony the most probative evidence available through reasonable efforts. Agbodjogbe is within the Court's subpoena power, so his live testimony is superior and available. *United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir. 1996) (holding statements inadmissible where witness "could have been subpoenaed to testify"). Even if Agbodjogbe ignores the subpoena Plaintiff served on him, Agbodjogbe was deposed twice in this case for a total of nearly 14 hours. WBL was present for that testimony, which is more probative of and trustworthy on the issues in this case than his prior trial testimony.

Finally, Plaintiff argues there is "no question that the verdict" from "the Agbodjogbe [T]rial" is relevant and admissible under the residual exception. (Opp. at 5.) She cites no authority showing that a prior verdict a plaintiff obtained against one person is relevant to related claims against a different person in a subsequent trial with a different finder of fact. Such a finding would usurp the exclusive province of the law of collateral estoppel. And as to the hearsay issue, Plaintiff does not bother distinguishing *Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993), which held that Rule 803(8)(C) did not apply to judicial findings of fact. (*See* Motion at 8, 11.) While *Nipper* did not discuss the residual exception, its reasoning shows that the Fourth Circuit would not consider the Agbodjogbe Trial verdict to present the rare and exceptional case warranting its application:

> We note that at common law a judgment from another case would not be admitted. 5 John H. Wigmore, *Wigmore on Evidence* § 1671a (James H. Chadbourn rev. 1974); 1 *McCormick on Evidence* § 298 (John W. Strong ed., 4th ed. 1992); 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(22)[01] (1993). We also note that when the drafters of the Federal Rules of Evidence wanted to allow the admission of judgments or their underlying facts, they did so expressly.

---

[1] WBL's opening brief explained why neither Agbodjogbe nor Plaintiff's lawyers protected its interests in the Agbodjogbe Trial. (Motion at 9–10.)

> See Fed. R. Evid. 803(22) (previous conviction); Fed. R. Evid. 803(23) (personal history, etc., boundaries).

*Id.* at 417. Applying the residual exception to the Agbodjogbe Trial verdict would undermine the intent of the drafters of the Federal Rules of Evidence, so the Court should reject Plaintiff's argument.

## II. THE COURT SHOULD PRECLUDE PLAINTIFF FROM ATTEMPTING TO INTRODUCE IRRELEVANT, HEARSAY STATEMENTS OF KENNETH WILLIAMS [MIL NO. 3]

In its opening brief, WBL explained that Plaintiff intended to elicit irrelevant, hearsay statements from Agbodjogbe about an alleged conversation with independent loan broker Kenneth Williams where he allegedly told Agbodjogbe to lie to WBL about Agbodjogbe's planned use for the proceeds of a loan he applied for (but which never closed) and that Williams had previewed the false story to the WBL employee who interviewed Agbodjogbe. (Motion at 11–13.) As to hearsay, Plaintiff offers two responses: (1) the statements are "evidence of what was communicated to WBL," and (2) they are "admissible under Rule 801(d)(2) as an opposing party's statement." (Opp. at 7.) Both arguments misapply the law and ignore the unavoidable second level of hearsay.

First, Plaintiff incorrectly argues that Williams's statements to Agbodjogbe are "not hearsay because" they are "asserted not for [their] truth, but rather as evidence of what was communicated to WBL regarding Agbodjogbe's story, in much the same way that the parties have stipulated to the admissibility of the various IRS 3520 forms." (Opp. at 7.) This argument focuses on the wrong layer of hearsay. The testimony at issue involves statements Williams allegedly made to Agbodjogbe about a conversation Williams allegedly had with WBL-employee Jon Pezzino. Plaintiff's argument focuses on whether alleged statements by Williams to Pezzino would be admissible as non-hearsay evidence of what WBL knew. But WBL's motion is about precluding

7

Agbodjogbe from testifying about alleged statements by Williams *to Agbodjogbe*. The fact that some of Williams's hearsay statements to Agbodjogbe describe an alleged communication *to WBL* does not matter because Agbodjogbe's testimony about Williams's alleged statements are offered for their truth (*i.e.*, that Williams had a conversation with Pezzino about Agbodjogbe's false story). Only Williams or Pezzino could testify about the conversation Agbodjogbe claims Williams told him about, but Pezzino denies that it occurred and Williams was never deposed in this case and is not coming to trial. In short, this argument fails to grapple with the fundamental hearsay problem posed by Agbodjogbe repeating statements made to him by Williams about a purported conversation between Williams and Pezzino.

Second, Plaintiff argues that statements by co-defendant Kenneth Williams are admissible *against WBL* as admissions of a party opponent under Rule 801(d)(2) because Plaintiff is "a party-opponent with respect to Defendant Kenneth Williams and is *not* his co-defendant." (Opp. at 7–8.) Plaintiff, however, does not explain which subpart of Rule 801(d)(2) supports her argument and instead inappropriately relies on a distinction of the *Grajales-Montoya* case WBL cited in its opening brief.

Plaintiff's brief ignores that *Grajales-Montoya* held that only a statement by *the Government* could be offered *against the Government* under Rule 801(d)(2). *United States v. Grajales-Montoya*, 117 F.3d 356, 364 (8th Cir. 1997) (holding that "[w]e therefore believe that Mr. Deluca sought to introduce the statements against the government's case, rendering them inadmissible unless they could somehow be considered an admission by the government as defined in Fed. R. Evid. 801(d)(2). Because Mrs. Deluca's statements plainly do not constitute statements by the government, *see* Fed. R. Evid. 801(d)(2), the trial court did not err in excluding them."). Plaintiff's reading of *Grajales-Montoya* would allow prosecutors to introduce statements by one

criminal defendant against any of his co-defendants simply because all of them are party opponents to the government. That is not the law, as the existence of the co-conspirator hearsay exclusion demonstrates—an exclusion that would be unnecessary if all co-defendants' statements were admissible against each other whether or not the statements were made "by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). As WBL's opening brief explained, Rule 801(d)(2) allows a litigant to introduce into evidence *against the opposing party* statements made by *that opposing party*. (Motion at 12.) In other words, Plaintiff may use WBL's own statements against it, but she cannot use Williams's statements against WBL.

As to relevance, Plaintiff argues that "Williams's statements regarding what WBL knew" are relevant because "they speak to WBL's knowledge of Agbodjogbe's fraud, and whether WBL as willfully blind to fraudulent activity." (Opp. at 7.) The story Plaintiff wants to tell is that "Kenneth Williams coached [Agbodjogbe] to lie about his kids' nonexistent savings account," and that "Williams had spoken with Pezzino and previewed for him the false story he was about to hear" from Agbodjogbe. (Opp. at 3.) The implication is that Pezzino, a WBL Credit Analyst, knew the account was a fiction all along. Even if that were true (it is not), that lie is about Agbodjogbe's use of the proceeds of a loan that never closed. It has nothing to do with establishing that WBL suspected Agbodjogbe had defrauded Plaintiff and used her money to purchase the properties he sought to use as collateral for WBL's loans.

In fact, Plaintiff's discussion of the relevance of the Williams hearsay highlights a major problem with her case. She argues that if "WBL followed through on its underwriting condition" of verifying the existence of the children's savings account, "they would have learned, as Agbodjogbe has since admitted repeatedly under oath, that his children had no such funds and there was no such savings account," but that "WBL chose to refrain from such an inquiry." (Opp.

9

at 7.) That is irrelevant to proving WBL's willful blindness to Agbodjogbe's fraud against Plaintiff. At most, it shows WBL had an opportunity to catch Agbodjogbe in a lie about something else, which may have contributed to WBL's unspecified suspicions about Agbodjogbe. No amount of unspecified suspicions can add up to willful blindness to the specific fraud Agbodjogbe allegedly perpetrated against Plaintiff, so there is no reason to allow Plaintiff to introduce testimony on this issue.

### III. THE COURT SHOULD PROHIBIT PLAINTIFF FROM ELICITING IRRELEVANT TESTIMONY ABOUT MONEY LAUNDERING [MIL NO. 7]

Similarly, WBL asked the Court to prohibit Plaintiff from questioning WBL witnesses about unfounded concerns they had that the large wires in N&A Kitchen's bank records were evidence of money laundering because those concerns do not help Plaintiff show WBL knew or was willfully blind about Agbodjogbe's alleged fraud against Plaintiff. (Motion at 13–14.) In response, Plaintiff argues that the fact that "WBL approved Agbodjogbe for three loans despite his file carrying a note of 'high fraud risk' and a WBL employee expressing her concern that he was potentially money laundering is directly relevant to both WBL's knowledge of and substantial assistance in Agbodjogbe's underlying fraud." (Opp. 8.)

Plaintiff's flawed argument illustrates why WBL asked the Court to exclude this testimony as irrelevant and a waste of time. Plaintiff has no evidence that WBL suspected the wire transfers were evidence that Agbodjogbe was defrauding the *person sending the wires* but chose not to inquire further about it, which would be relevant to the issue of willful blindness here. So Plaintiff's trial strategy apparently will involve arguing that generic concerns about Agbodjogbe's character and repayment risk (*i.e.*, "high fraud risk") amount to willful blindness. It does not, and so the Court should preclude questioning about suspicions of money laundering.

## CONCLUSION

For the foregoing reasons, WBL respectfully requests that the Court rule *in limine* that:

1. Plaintiff cannot rely on collateral estoppel with respect to any findings from the Agbodjogbe trial [MIL No. 1];

2. Except for the purpose of impeachment, Plaintiff may not introduce any testimony from the Agbodjogbe trial because it is hearsay [MIL No. 1];

3. Plaintiff may not elicit testimony about any statements made by Kenneth Williams because those statements are hearsay [MIL No. 3];

4. Plaintiff may not question WBL witnesses about money laundering because it is irrelevant and will waste trial time [MIL No. 7].

Dated: September 8, 2023                     Respectfully submitted,

**World Business Lenders, LLC**

By:   *s/ Stephen J. Rosenfeld*
One of its attorneys
Stephen J. Rosenfeld (Bar No. 30628)
Jacob Radecki (*pro hac vice*)
Patrick O'Meara (*pro hac vice*)
Margaret Redshaw (*pro hac vice*)
MCDONALD HOPKINS LLC
300 North LaSalle, Suite 1400
Chicago, IL 60654
312-280-0111
srosenfeld@mcdonaldhopkins.com
jradecki@mcdonaldhopkins.com
pomeara@mcdonaldhopkins.com
mredshaw@mcdonaldhopkins.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, caused to be served the foregoing document by electronically mailing the foregoing document to counsel for Plaintiff on September 8, 2023.

/s/ *Stephen J. Rosenfeld*

32478760.2